J-S11034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA

             Appellee        :

                                   :

        v.                 :

                                   :

JERREL JAYNES               :

                                   :

            Appellant      :       No. 1864 EDA 2022

Appeal from the PCRA Order Entered June 22, 2022
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001351-2017,
CP-46-CR-0006380-2016

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA

             Appellee        :

                                   :

        v.                 :

                                   :

JERREL JAYNES               :

                                   :

            Appellant      :       No. 1865 EDA 2022

Appeal from the PCRA Order Entered June 22, 2022
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001351-2017,
CP-46-CR-0006380-2016

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:            **FILED SEPTEMBER 11, 2023**

Appellant, Jerrel Jaynes, appeals *pro se* from the order entered in the Montgomery County Court of Common Pleas, dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. We affirm.

A prior panel of this Court summarized the underlying facts of this appeal as follows:

> [Appellant] participated in a sophisticated criminal enterprise that was responsible for committing a string of burglaries in Montgomery, Chester, and Delaware counties.[2] This large-scale burglary ring targeted affluent homes in these counties, stealing high value and easily transportable items such as jewelry, designer purses, and cash. The police used cellular phone records, surveillance videos, and DNA evidence to link [Appellant] and his confederates to these burglaries.
>
> > [2] The other co-conspirators involved in the criminal enterprise were Kebbie Ramseur, Shron Linder, Ralph Mayrant, and Wasim Shazad.
>
> Following his arrest, [Appellant] filed pre-trial motions challenging (a) car stops in Whitpain Township, Pennsylvania and Cherry Hill, New Jersey; (b) the admission of phone records as business records; (c) allegedly unreliable expert testimony; and (d) an allegedly defective search warrant. The trial court addressed these motions during a three-day suppression hearing.
>
> At the suppression hearing, the Commonwealth presented evidence of the contested car stops. First, Sergeant Peter Benedetti of the Cherry Hill, New Jersey Police Department testified he responded to an attempted home invasion and thereafter conducted a search of the neighborhood for suspicious vehicles. During the canvass, Sergeant Benedetti encountered a parked vehicle—with its lights off— in a dead-end area of the neighborhood, a quarter mile from where the attempted burglary occurred.
>
> As he approached the vehicle, Sergeant Benedetti observed Ralph Mayrant in the driver's seat and Shron Linder in the front passenger seat. During the encounter, neither of the men could explain their presence in the neighborhood, and so Sergeant Benedetti asked them to step out of the car.
>
> He then placed the men in a police cruiser and conducted identification and warrant checks. Based on his search,

Sergeant Benedetti discovered that Linder had an active arrest warrant. As a result, Linder was placed in custody. Thereafter, Sergeant Benedetti entered the vehicle and, in plain view, noticed several high-end watches in the center console and passenger compartments. Officer Benedetti confiscated the watches and impounded the car.

Next, Officer Francis Rippert of the Whitpain Township, Pennsylvania Police Department testified he responded to a report of three shadowy figures in a housing development with flashlights. Following his arrival, he observed a parked car in the development with its lights on. Officer Rippert, without activating his emergency lights, pulled alongside the vehicle.

Officer Rippert testified that he stopped merely to inquire if the occupants were lost. However, as the encounter continued, the driver, Kebbie Ramseur, and his passengers, [Appellant] and Linder, exhibited signs of nervousness and provided conflicting explanations for being in the development. Officer Rippert also noticed that [Appellant] and Linder were actively trying to conceal suspicious items between their seats.

This suspicious activity, coupled with Linder's refusal to hand over a bag, led Officer Rippert to believe the occupants were involved in criminal activity. He then had [Appellant] and the other occupants removed from the car, handcuffed, and detained near the vehicle.

Following [Appellant's] removal from the car, Officer Rippert conducted a warrant check. The encounter eventually ended with the arrest of [Appellant] and Ramseur for outstanding warrants. Linder, on the other hand, was free to leave.

In addition, the suppression court addressed [Appellant's] claim that the call detail records of his T-Mobile cellular phone should not be admitted as business records under the hearsay exception. [Appellant] also argued that his cell phone records—obtained pursuant to a search warrant issued in the state of Delaware—should be suppressed because the warrant lacked probable cause. Moreover, [Appellant] argued that the Commonwealth's expert

witness, Detective Kerr, was unqualified to testify as to [Appellant's] location during the burglaries via cellphone records.

The court denied [Appellant's] motions. Immediately after the denial of his motions, [Appellant] proceeded to a stipulated bench trial in which the Commonwealth incorporated the affidavits of probable cause for each docket. On Docket 1351-2017, the court found [Appellant] guilty of four counts of burglary and one count of robbery (inflicts serious bodily injury).[3] On Docket 6380-2016, [Appellant] was found guilty of one count of attempted burglary.[4] The court sentenced [Appellant] to an aggregate sentence of 10 to 20 years' imprisonment on both dockets in addition to restitution. Thereafter, [Appellant] filed a post-sentence motion, which the trial court denied.

[3] *See* 18 Pa.C.S.A. §§ 3502(a)(2) and 3701(a)(1)(i).

[4] *See* 18 Pa.C.S.A. §§ 3502(a)(2) and 901(a).

*Commonwealth v. Jaynes*, Nos. 2435 EDA 2018 and 2436 EDA 2018, unpublished memorandum at 2-5 (Pa.Super. filed February 6, 2020), *appeal denied*, 661 Pa. 9, 235 A.3d 269 (2020) (internal citations omitted). This Court affirmed the judgment of sentence on February 6, 2020, and our Supreme Court denied Appellant's petition for allowance of appeal on June 1, 2020. *See id.*

On May 18, 2021, Appellant filed a timely *pro se* PCRA petition. The court appointed counsel, who submitted a "no-merit letter"[1] and petition to withdraw on May 3, 2022. The PCRA court gave notice of its intent to dismiss

---

[1] *See Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

the PCRA petition without a hearing on May 10, 2022, and granted counsel's petition to withdraw. Appellant filed a *pro se* response on June 1, 2022. The court denied PCRA relief on June 22, 2022. Appellant filed timely notices of appeal on July 18, 2022 at each underlying docket.[2] Both the PCRA court and Appellant complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant now raises four issues for our review:

I. Whether the PCRA court abused discretion and/or committed reversible error in dismissing [the] PCRA Petition as being "without merit" when [Appellant] presented the [PCRA] Court "sprint" call detail records (CDR) in "Objections" substantiating his claim that both Detective Fink and Pitchford knowingly and intentionally or with reckless disregard for the truth, included fabricated falsified material facts: falsified cellphone call detail records (CDR), and cell site location information (CSLI) in the warrant affidavit to establish probable cause [] violated [Appellant's rights under] Article I, § 8 of the Pennsylvania Constitution, [the IV and XIV Amendment[s] of the United Stated Constitution] as interpreted by **Commonwealth v. D'Angelo**; **Franks v. Delaware**.

II. Whether the PCRA court abuse[d] discretion and/or committed reversible error in dismissing [Appellant's] PCRA [Petition] by not requiring an evidentiary hearing where the warrant authorizing cellular telephone records was constitutionally defective because it was issued without a showing of probable cause [as it contained false and misleading information] which violated Article I Section 8 of [the] Pennsylvania Constitution, the IV and XIV Amendment of the United States Constitution.

III. Whether the PCRA Court abused [its] discretion and/or committed reversible error in dismissing [Appellant's] PCRA by not requiring an evidentiary hearing where there

_____

[2] This Court consolidated the appeals *sua sponte* on October 18, 2022.

exists "falsified material facts in dispute" pertaining to cell phone records [(CDR)] as they relate to [Appellant's] case, to establish "authenticity" of all material evidence as it relates to Detective Kerr "false and misleading testimony" and the overall impact said evidence had on [Appellant's] court proceedings. The prosecutor knew or should had known the calls was non-existent and the Sprint and T-Mobile cell phone records [(CDR)] are both [irrefutable].

IV. Whether the PCRA Court abused [its] discretion and/or committed reversible error in dismissing [Appellant's] PCRA [Petition] by not requiring an evidentiary hearing on the effectiveness of counsel, prior to trial, during trial and/or on direct appeal regarding [A]ppellant's three discussed issues: I, II, AND III.

(Appellant's Brief at vi-vii) (bracketing in original).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." *Commonwealth v. Beatty*, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). "[W]e review the court's legal conclusions *de novo*." *Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021). "In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S. § 9543(a)(2)." *Commonwealth v. Jones*, 590 Pa. 202, 216, 912 A.2d 268, 276 (2006).

Preliminarily, we note that the questions presented in the first three issues on appeal appear to raise claims of trial court error. However, in

Appellant's brief he presents these claims as underlying meritorious claims forming the basis of both appellate counsel's ineffectiveness and trial counsel's ineffectiveness. (*See* Appellant's Brief at 10 (stating: "[Appellant's] crucial argument for relief on this essential issue is based on his constitutional right to effective assistance of counsel prior to, at trial and/or on appeal"); *id.* at 11 n.1 (stating: "For the purpose of convenience…Appellant will incorporate all of his claims of trial and appellate counsel's ineffectiveness into each of his essential claims, ISSUES I, II, and III")). Because Appellant has couched his claims of trial court error in the context of ineffective assistance of counsel, these claims are cognizable under the PCRA and we will review them as ineffectiveness claims. *See Jones, supra* at 218, 912 A.2d at 277 (reviewing claims despite boilerplate language used to frame them as ones of ineffective assistance of counsel); 42 Pa.C.S.A. § 9543(a)(2).

Appellant's first two issues are related, and we address them together. In both issues, Appellant challenges trial counsel's litigation of his suppression motion related to the affidavit of probable cause, and appellate counsel's failure to preserve the specific claim on appeal. Specifically, he insists that trial counsel should have more thoroughly litigated Appellant's claim that the results of the search warrant should have been suppressed because the affidavit of probable cause, upon which the warrant was issued, contained deliberate falsehoods. Appellant insists that the affidavit misstated that he made a phone call with his co-defendant Ramseur in close proximity to one of

the burglaries, but he claims that cell phone call detail records do not support this statement. Furthermore, Appellant contends that the affidavit of probable cause incorrectly stated that he was involved in fifteen burglaries in Pennsylvania. Appellant concludes counsel were ineffective in connection with litigation of his suppression motion, and this Court must grant relief. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis

for the assertion of ineffectiveness is of arguable merit[.]" ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting ***Commonwealth v. Geathers***, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." ***Commonwealth v. Kelley***, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting ***Pierce, supra*** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting ***Sandusky, supra*** at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the

proceeding." ***Commonwealth v. Spotz***, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." ***Hopkins, supra*** at 876 (quoting ***Commonwealth v. Chambers***, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

Regarding suppression motions:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Baker***, 24 A.3d 1006, 1015 (Pa.Super. 2011), *aff'd*, 621 Pa. 401, 78 A.3d 1044 (2013) (internal citations and quotation marks omitted).

> In order to secure a valid search warrant, an affiant must provide a magistrate with information sufficient to persuade a reasonable person that there is probable cause for a search. The information must give the magistrate the

opportunity to know and weigh the facts and to determine objectively whether there is a need to invade a person's privacy to enforce the law.

*Id.* at 1017 (citations omitted). Furthermore, "misstatements of fact will invalidate a search warrant and require suppression of the fruits of the search **only if the misstatements of fact are deliberate and material**." *Id.* (emphasis in original). "The question of whether a misstatement was deliberately made is to be answered by the lower court." *Id.* A fact is material if without it, probable cause to search would not exist. *Id.* at 1018.

Instantly, the PCRA court found that Appellant's underlying claim was meritless. The court explained:

> [Appellant's] claim that Detectives Fink and Pitchford made material misrepresentations in the affidavit of probable cause is not substantiated by any facts. His PCRA petition alleges that Detectives Fink and Pitchford "made up" a number of paragraphs in the affidavit of probable cause, but in support of this claim, his petition only generally cites to these paragraphs and exhibits that he fails to attach. [Appellant] offers no specific evidence or proposed witnesses establishing that either detective made a material misstatement, or even if a material misstatement was made, that it was made deliberately or knowingly as required to invalidate a search warrant….

(PCRA Court Opinion, filed 9/19/22, at 6). The court further explained that ultimately, the search warrant was supported by probable cause:

> In this case, [Appellant] was charged with corrupt organizations, conspiracy, and multiple burglaries. It was abundantly clear that members of this corrupt organization relied heavily on the use of cell phones to carry out criminal activity and communicate with each other in "casing" homes before burglaries, as well as to communicate during and after burglaries. The affidavit explicitly details the

- 11 -

investigation of police and how each member of the conspiracy was identified. [Appellant] was tied to individuals who clearly committed burglaries that shared similarities to later burglaries. Those individuals were then found at the scene of an attempted burglary, in possession of stolen watches from a different burglary, in [Appellant's] car. Based on the cell phone records of the co-conspirators already in possession of the police, [Appellant] had been in constant contact with his co-conspirators during at least one other known burglary.

Under the totality of the circumstances test, there was a "fair probability" that evidence of criminal activity associated with a crime would be recovered from the phone records of [Appellant]. The extensive history set forth in the affidavit established the existence of a broad ranging conspiracy and corrupt organization, the use of cell phones in the commission of criminal activity, and clear evidence that co-defendants listed in the affidavit did not work alone. Therefore, the conclusion that there was in fact probable cause to support that contention was well supported by the affidavit, and there was no reason to suppress the evidence obtained pursuant to the warrant. Thus, [Appellant's] claim that the warrant authorizing phone records lacked probable cause is meritless.

(*Id.* at 8).

Upon review, we agree with the PCRA court that there is no merit to Appellant's underlying suppression claim. Appellant has not met his burden to prove that detectives deliberately made a misstatement in the affidavit of probable cause. **See Baker, supra**. Therefore, Appellant cannot establish that the search warrant was invalid because of the alleged material misrepresentations. **See id.** Accordingly, because Appellant has not established that his underlying claim has merit, we conclude that he is not entitled to relief on his claim of ineffective assistance of trial and appellate

counsel. *See Smith, supra*; *Poplawski, supra*. Appellant is not entitled relief on either of his first two claims.

In his third claim of ineffective assistance, Appellant argues that trial counsel failed to object to falsified testimony given by Detective Kerr during both the preliminary and suppression hearings. Specifically, Appellant claims that Detective Kerr testified that Appellant called co-defendant Ramseur near the time of one of the burglaries while in close proximity to where the burglary occurred. Appellant insists that this representation was false based on his review of co-defendant Ramseur's Sprint call detail records and Appellant's T-Mobile call detail records. (Appellant's Brief at 18-19). Appellant submits that this claim differs from that which he raised in his direct appeal, which was that the trial court erred in denying his motion *in limine* to preclude Detective Kerr's testimony as an expert witness.[3] Appellant concludes counsel rendered ineffective assistance, and this Court must grant relief. We disagree.

The PCRA court discussed the underlying merits of Appellant's claim concerning Detective Kerr's false testimony as follows:

> …[Appellant's] argument that Detective Kerr provided "false and misleading" testimony is unpersuasive. Here, [Appellant] alleges that Detective Kerr committed perjury, quoting several lines of transcript testimony from the preliminary hearing where Detective Kerr speaks to cell phone and cell tower location data placing [Appellant] "approximately one and one half to two miles from that location" and "not at that cell tower near that property" on

---

[3] We agree with Appellant that he did not previously litigate on direct appeal a challenge to Detective Kerr's allegedly false testimony.

- 13 -

a handful of dates in question. *See* Amended PCRA Petition, [at] 10-12. Nowhere does [Appellant] point to any evidence to support his assertion that this testimony constituted perjury, instead cursorily concluding that "the entire line of [questioning] along with [its] answers" is "false and misleading" for discussing "non-existent" phone calls. [Appellant] fails to elaborate on these conclusory statements, leaving the [PCRA c]ourt to speculate as to the exact nature of this alleged error. The [PCRA c]ourt can only assume [Appellant] is revisiting a previously litigated issue from his direct appeal, where he contended that cell phone pings placing him several miles from the burglary location made the verdict against the weight of the evidence. As [the trial c]ourt explained in its [o]pinion, cell phone records placing [Appellant] at locations that do not precisely match the burglary location at the time of the crime do not make it less likely that he was involved in the burglary or otherwise negate the sufficiency and weight of the evidence against him, where he is liable as an accomplice with his co-conspirators. *See* Trial Court Opinion, 11/6/18, at 30-37. [Appellant] provides no basis in fact to substantiate claims that Detective Kerr committed perjury[.]

(PCRA Court Opinion at 9-10).

The record supports the PCRA court's analysis. Appellant makes only conclusory statements that Detective Kerr gave false testimony and provides no relevant evidence to support these assertions. On this record, we discern no error in the court's determination that Appellant failed to demonstrate arguable merit on this claim such that he could succeed on his ineffectiveness claim. *See Poplawski, supra*.[4]

---

[4] To the extent Appellant also argues appellate counsel was ineffective for failing to litigate this issue on direct appeal, that claim also fails as counsel cannot be ineffective for failing to raise a meritless claim. *See id.*

In his fourth and final issue, Appellant alleges that the PCRA court erred when it dismissed his PCRA petition without a hearing. Appellant claims that evidence of the call detail records required an evidentiary hearing to show that counsel had no reasonable basis for not using this allegedly exculpatory evidence. Appellant concludes the court erred by denying relief without a hearing, and this Court must grant relief. We disagree.

"[A] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to relief, and no purpose would be served by any further proceedings." **Commonwealth v. Hill**, 242 A.3d 438 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 256 A.3d 422 (2021) (citing **Commonwealth v. Wah**, 42 A.3d 335 (Pa.Super. 2012)). "With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." **Commonwealth v. Mason**, 634 Pa. 359, 387, 130 A.3d 601, 617 (2015). This Court has further explained that:

> It is well settled that [t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. [T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Maddrey***, 205 A.3d 323, 328 (Pa.Super. 2019) (internal

citations and quotation marks omitted).

Here, Appellant has not established any genuine issue of fact exists that

would entitle him to relief. As such, we cannot conclude that the PCRA court's

denial of an evidentiary hearing was an abuse of discretion. ***See id.***

Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2023